UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
ADVANCE MAGAZINE PUBLISHERS INC.
d/b/a CONDÉ NAST,

        *Plaintiff*,

        v.

GOULASH UNLIMITED LLC,

        *Defendant*.
------------------------------------------------------------ X

No. _____

**COMPLAINT**

Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast ("Condé Nast"), as and for its Complaint against Defendant Goulash Unlimited LLC ("Goulash"), alleges as follows:

**NATURE OF THE ACTION**

1. Condé Nast is the owner of the GOURMET trademark long associated with *Gourmet* magazine, the famed culinary publication that ran for over half-a-century until 2009, and which has continued to be used unabated in connection with Epicurious, Condé Nast's food-focused website and mobile phone app, and a variety of other forms to evoke the goodwill consumers associate with *Gourmet*. This action arises out of Goulash's unauthorized adoption and use of the GOURMET mark to brand its own food-focused website, launched in January 2026 and widely marketed with a litany of deceptive claims to the effect that "Gourmet magazine is back," all in a transparent attempt to create an association that does not exist and thereby drive its revenues on the back of the goodwill Condé Nast has long held and continues to hold in its GOURMET mark.

2. Goulash's misinformation campaign began with its very first feature falsely stating that its web publication was a "resurrection" of *Gourmet* magazine:



Goulash's new—not resurrected—web publication is marketed through Goulash's Instagram account with a handle, @Gourmet.Lives, implying the same false association.  Posts on this account and website make the false association even more obvious, with statements that "Gourmet is back, baby"; "*wakes up, yawns, stretches after 16-year-long nap, reaches for cold turkey sub on the nightstand*"; "Gourmet magazine is back, and we are ready for you to subscribe now."; and "Gorgeous new logo …"

3. Other statements Goulash has made on its website and in a press campaign to generate interest in (and subscriptions for) its publication express the view that Condé Nast has no trademark rights simply because it does not hold a federal trademark registration.  That is wrong.  Condé Nast has established and maintained rights from its continuous use of the mark, *beginning* with the long run of *Gourmet* magazine and continuing with the *ongoing* use of the mark on its own food-focused media and in a variety of other uses that evoke the continuing goodwill consumers associate with *Gourmet* magazine.

4. Marketplace confusion is, not surprisingly, the intended and actual result of Goulash's campaign to misinform consumers and drive up subscriptions.  User comments on Goulash's own @Gourmet.Lives account have encouraged the purported "resurrection" of *Gourmet* magazine with comments like "Very cool. Welcome back!"; "Crazy rebrand, here for the vibes"; "oh welcome back, old friend."  The confusion has extended to sources consumers turn to for information, including an endorsement from *New York* magazine in its "Approval Matrix"

wrongly referring to Goulash's new publication as "the recently resurrected *Gourmet*" and encouraging users to subscribe:



5.      Despite due demand that Goulash cease its infringing conduct, Goulash continues to infringe on Condé Nast's rights.  Accordingly, Condé Nast brings this action to seek the injunctive relief requested herein, together with any and all available monetary remedies to deter the type of flagrant infringements and false advertising in which Goulash has engaged.

## THE PARTIES

6.      Plaintiff Condé Nast is a corporation organized and existing under the laws of the state of New York, with its principal place of business in New York, New York.

7. Upon information and belief, Defendant Goulash Unlimited LLC is a New York limited liability company with its principal place of business in Ridgewood, New York.

## JURISDICTION AND VENUE

8. This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., and state law. The Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims arising under state law because all of the claims herein arise out of a common nucleus of facts.

9. Venue is proper under 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District and Goulash does business and is subject to personal jurisdiction in this District.

## FACTS RELEVANT TO ALL CLAIMS

### CONDÉ NAST'S LONGSTANDING AND CONTINUOUS USE AND OWNERSHIP OF THE GOURMET TRADEMARK

10. Condé Nast is a global media company, and publishes such well-known publications as *Vogue*, *Wired*, *GQ*, *Vanity Fair*, *Allure*, and *Glamour*.

11. One of Condé Nast's most popular and revered print publications was *Gourmet* magazine. First published in or around January 1941, and acquired by Condé Nast in 1983, *Gourmet* appeared in print through November 2009. Below are representative covers of *Gourmet* magazine from issues in 1961, 1993, and 2008 featuring the GOURMET mark:



12. During its long print run, *Gourmet* became—and still remains—known as the gold standard of culinary journalism, featuring contributions from luminaries such as George Plimpton, David Foster Wallace, Paul Theroux, and Annie Proulx; publishing thousands of recipes, articles, and photospreads; and earning a number of accolades, including the National Magazine Awards' 2004 award for general excellence and 2005 and 2008 awards for photography.

13. In 2004, Condé Nast licensed the publication of *The Gourmet Cookbook*, a 1,000+ page collection of more than 1,000 *Gourmet* recipes:



This cookbook continues to be sold today and, to date, has garnered over 10,000 ratings on the book review website Goodreads.com (*see* https://www.goodreads.com/book/show/53617.The_Gourmet_Cookbook).

14. Since 1995, Condé Nast has also offered GOURMET-branded content on its food website Epicurious (epicurious.com) and, since 2022, on the Epicurious mobile application.

15. Condé Nast also owns the domain gourmet.com, which long featured content from *Gourmet* magazine under its GOURMET mark:



16. After the magazine ended its regular print run in 2009, Condé Nast continued to maintain the gourmet.com site, including, for example, the following from October 2014:



17. In or around 2017, the gourmet.com site began redirecting traffic to Condé Nast's Epicurious website, which continued (and to this day continues) to provide content under the GOURMET mark:



The GOURMET brand is prominently promoted on Epicurious (*see, e.g.,* "Gourmet Ideas, Recipes & Cooking Tips," https://www.epicurious.com/source/gourmet). Condé Nast continues to generate revenue from GOURMET-branded content made available on the Epicurious site and mobile application.

18. Condé Nast has also earned advertising revenue from its GOURMET MAKES series on YouTube, which debuted in 2017, and whose videos have collectively garnered hundreds of millions of views.

19. Condé Nast also licenses the GOURMET mark for use on a variety of merchandise, including puzzles, wall art, mugs, greeting cards, stickers, puzzles, and playing cards.

20. By virtue of the foregoing uses of GOURMET over the course of many decades, Condé Nast has established and continues to maintain trademark rights in GOURMET in the fields of food, recipes, and cooking and goods and services related thereto.

### GOULASH'S INFRINGING AND MISLEADING USES OF THE GOURMET MARK TO BRAND AND PROMOTE ITS FOOD PUBLICATION

21. Without Condé Nast's approval or authority, Goulash recently launched its own "food magazine" entitled *Gourmet* on GourmetMagazine.net. Subscriptions to Goulash's *Gourmet* magazine are offered at different price tiers beginning at $7 per month.

22. Goulash promotes its *Gourmet* magazine on its Instagram account, @Gourmet.Lives, which, in its short existence, has already accrued more than 17,000 followers.

23. Goulash has also filed an application to register GOURMET with the U.S. Patent & Trademark Office ("USPTO") (Serial No. 99239527) for "Publishing of web magazines; Publication of electronic magazines; Online publication of journals; Online publication of blogs; Providing a website featuring blogs and non-downloadable publications in the nature of journal, magazine, and news article publications in the field(s) of hospitality industry; Providing on-line non-downloadable articles in the field of hospitality industry; Providing a website featuring non-downloadable articles in the field of hospitality industry; News reporter services; Providing an Internet news portal featuring links to news stories and articles in the field of current events" in Class 41 (the "Application").

24. These are the same or similar services in connection with which Condé Nast has long utilized its GOURMET mark.

25. In an attempt to trade on the goodwill associated with Condé Nast's GOURMET-branded content, Goulash has promoted its publication by falsely suggesting that it is associated with Condé Nast and *Gourmet* magazine.

26. The very first feature, issued on or about January 13, 2026, falsely states that *Gourmet* magazine is "back" and that its online publication is a "resurrection" of *Gourmet* magazine:



27. Goulash has also made statements on its website and Instagram account to emphasize its (non-existent) association with *Gourmet* magazine, such as "Gourmet is back, baby"; "*wakes up, yawns, stretches after 16-year-long nap, reaches for cold turkey sub on the nightstand*"; "Gourmet magazine is back, and we are ready for you to subscribe now."; "We (re)started a food magazine"; and "Gorgeous new logo …" Goulash's Instagram handle itself—@Gourmet.Lives—falsely suggests that its food magazine is a reincarnation of Condé Nast's *Gourmet* magazine.

28. Condé Nast has not authorized any of the foregoing uses.

29. Goulash's unauthorized use of the GOURMET mark has resulted in substantial marketplace confusion. This is reflected in user comments on Goulash's own Instagram account, including, for example:

- "Very cool. Welcome back!"
- "Crazy rebrand, here for the vibes"
- "oh welcome back, old friend"
- "Please bring back not only great writing and recipes but great photography, design, and styling -- I miss it so much."
- "hoping it will become a print mag again?"
- "Oh hell yeah I used to hoard copies of my mom's Gourmet magazine and it's about to get even better."

- "I have a lot of old issues …. Best food magazine ever in my opinion!! I loved the 'spare' type covers - Just Gourmet and an image."

30. This confusion has extended beyond Gourmet's social media followers to the sources of information on which consumers rely. For instance, the Wikipedia entry on Condé Nast's *Gourmet* magazine identifies gourmetmagazine.net as the domain name hosting the magazine's "relaunch." *New York* magazine went so far as to recommend Goulash's *Gourmet* publication on its "Approval Matrix" with the accompanying comment, "The **recently resurrected** *Gourmet* is worth the $7-a-month subscription fee." (Emphasis in original.)

31. Upon information and belief, Goulash has deliberately and intentionally chosen to brand its food publication as a "resurrection" and return of *Gourmet* magazine in an effort to drive up subscriptions and revenue.

32. On February 5, 2026, Condé Nast sent Goulash a letter objecting to its use the GOURMET mark and the deliberate association Goulash has created with Condé Nast and *Gourmet* magazine, and demanding that Goulash cease its infringing activities.

33. Over Condé Nast's objections, Goulash has continued its infringing activities and to intentionally trade on the goodwill of Condé Nast's GOURMET mark, without Condé Nast's approval or consent.

### FIRST CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION
### UNDER 15 U.S.C. § 1125(a)

34. Condé Nast repeats and realleges each and every allegation of paragraphs 1 through 33, above, as though fully set forth herein.

35. Goulash's unauthorized use of the GOURMET mark in conjunction with its business, false designation of origin, and false and misleading descriptions and representations of fact, as alleged herein, are likely to cause confusion, cause mistake, or deceive as to the affiliation,

connection, or association of Goulash with Condé Nast and its GOURMET-branded content, or as to the origin, sponsorship, or approval of Goulash's goods or commercial activities by Condé Nast, in violation of 15 U.S.C. § 1125(a).

36. As a direct and proximate result of Goulash's wrongful acts, Condé Nast has suffered and continues to suffer and/or is likely to suffer damage to the GOURMET mark and its business reputation and goodwill.

37. Goulash will continue, unless restrained, to conduct its business and offer products and services using the GOURMET mark and will cause irreparable damage to Condé Nast. Condé Nast has no adequate remedy at law and is entitled to an injunction restraining Goulash and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of false designation of origin or association.

38. Condé Nast is further entitled to recover from Goulash the actual damages Condé Nast has sustained, is sustaining, and/or is likely to sustain as a result of Goulash's wrongful acts. Condé Nast is presently unable to ascertain the full extent of the monetary damages it has suffered and/or is likely to sustain by reason of Goulash's acts of false designation of origin or affiliation.

39. Condé Nast is further entitled to recover from Goulash the gains, profits, and advantages Goulash has obtained as a result of its wrongful acts. Condé Nast is presently unable to ascertain the extent of the gains, profits, and advantages Goulash has realized by reason of its acts of false designation of origin or affiliation.

40. Due to the intentional, deliberate, and willful nature of Goulash's wrongful acts, Condé Nast is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

41. The intentional, deliberate and willful nature of Goulash's wrongful acts renders this case exceptional pursuant to 15 U.S.C. § 1117, entitling Condé Nast to an award of reasonable attorneys' fees incurred in connection with this action.

42. Pursuant to 15 U.S.C. § 1119, Condé Nast is also entitled to cancellation of the Application.

## SECOND CAUSE OF ACTION
## UNFAIR COMPETITION UNDER THE COMMON LAW OF NEW YORK

43. Condé Nast repeats and realleges each and every allegation of paragraphs 1 through 42, above, as though fully set forth herein.

44. By reason of the foregoing, Goulash has been, and is, engaged in acts of unfair competition in violation of the common law.

45. For the reasons described herein, Goulash's conduct has been willful, intentional and deliberate, and have been committed with knowledge of Condé Nast's rights with respect to the GOURMET mark and in bad faith.

46. Goulash's acts complained of herein have damaged and will continue to irreparably damage Condé Nast. Condé Nast has no adequate remedy at law for these wrongs and injuries. The damage to Condé Nast includes harm to its trademarks, goodwill, and reputation in the marketplace that money cannot compensate.

47. By reason of the foregoing, Condé Nast is entitled to: (a) injunctive relief restraining and enjoining Goulash and its agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on its behalf, from using the GOURMET trademark, or trademarks confusingly similar thereto, in connection with the marketing or sale of any goods or services by Goulash; (b) Condé Nast's actual damages sustained as a result of Goulash's wrongful acts; (c) an award of Goulash's unjust profits, as well as sums sufficient to compensate

Condé Nast for all harm suffered as a result of Goulash's conduct; and (d) exemplary punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Condé Nast prays that this Court enter judgment against Goulash as follows:

1. Ordering that Goulash and its officers, members, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Goulash or with any of the foregoing be enjoined from:

   a. Promoting, advertising, publicizing, distributing, offering for sale, or selling any goods or services under the GOURMET mark or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the GOURMET mark;

   b. Representing, stating or implying that Goulash's goods, services, or commercial activities are approved, endorsed, or sponsored by Condé Nast, or are affiliated or associated in any way with Condé Nast and/or its GOURMET-branded goods and services;

   c. Engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Condé Nast and from otherwise interfering with or injuring the GOURMET mark or the goodwill associated therewith; and

  d. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

2. Ordering the cancellation of Goulash's application to register GOURMET with the USPTO (Serial No. 99239527);

3. Ordering the transfer to Condé Nast of the gourmetmagazine.net domain name;

4. Awarding Condé Nast three times the amount of compensatory damages and increased profits;

5. Awarding exemplary and punitive damages;

6. Awarding Condé Nast its costs and attorneys' fees;

7. Awarding pre-judgment interest; and

8. Such other and further relief as the Court deems just and proper.

DATED: February 20, 2026  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/Wook Hwang
 Wook Hwang
 30 Rockefeller Plaza
 New York, New York 10112
 212.634.3054

 Paul A. Bost (*pro hac vice* to be filed)
 1901 Avenue of the Stars, Suite 1600
 Los Angeles, California 90067
 310.228.3700

*Attorneys for Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast*